**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| ASHLEY MCKENNELL,<br>Plaintiff,<br>v.<br>GOPHER RESOURCE, LLC and<br>ECP GOPHER HOLDINGS, LP,<br>Defendants. | Case No.: ____________________ |

**NOTICE OF REMOVAL OF**
**GOPHER RESOURCE, LLC AND ECP GOPHER HOLDINGS, LP**

Pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendants Gopher Resource, LLC ("Gopher") and ECP Gopher Holdings, LP ("Gopher Holdings," and with Gopher, "Defendants"), by and through their undersigned counsel, hereby remove this action—with an express reservation of all defenses and rights—from the District Court for the First Judicial District of the County of Dakota, Minnesota to the United States District Court for the District of Minnesota. For the sole and limited purpose of establishing the basis of this Court's jurisdiction, Defendants assume the truth of Plaintiff Ashley McKennell's allegations herein. This Court has jurisdiction over this action pursuant to CAFA, because it is a putative class action with more than 100 members in the proposed class, there is minimal diversity and the amount in controversy exceeds $5 million in the aggregate.

## I. FACTUAL BACKGROUND

1. On August 28, 2025, Plaintiff filed a Class Action Complaint ("Complaint") in the District Court for the First Judicial District of the County of Dakota, Minnesota,

captioned Ashley McKennell v. Gopher Resource, LLC, et al., Case No. 19HA-CV-25-5896. A copy of the Complaint is attached hereto as **Exhibit 1**.

2. Plaintiff purported to effectuate service of the Complaint on Gopher on September 4, 2025, and on Gopher Holdings on September 8, 2025. A copy of the summonses and service of process receipts that were served on Gopher and Gopher Holdings are attached hereto as **Exhibits 2 and 3**, respectively.

3. Plaintiff alleges that she "resided in close proximity to the Gopher Resource lead smelting facility" in Eagan, Minnesota (the "Eagan Facility") and was purportedly "exposed to lead, cadmium, arsenic, dioxins and sulfur dioxide, [and] as a result, suffered and continues to suffer serious personal injuries" on account of "Defendants' deliberate, intentional, negligent and/or reckless operation of their Eagan Facility." Ex. 1 ("Compl.") ¶ 1. The Complaint, in turn, asserts causes of action for negligence and violation of the Minnesota Environmental Response and Liability Act, Minn. Stat. § 115B.05, Subdivision 1(2) ("MERLA"). See id. ¶¶ 40-70.

4. Plaintiff purports to bring this action on behalf of herself and a putative class. See Compl. at p. 1 (labeling the Complaint as a "Class Action Complaint"). The Complaint alleges that Defendants' operation of the Eagan Facility in Eagan, Minnesota's "densely populated residential community" of approximately 68,855 people resulted in the release of hazardous substances in the community, which allegedly caused harm in the form of water and air contamination in the surrounding areas and the exposure of individuals in the Eagan community to hazardous substances. Id. ¶¶ 15-18, 25-27. The strongest inference from Plaintiff's labeling of her pleading as a "Class Action Complaint" and her allegations

with regard to the purported harm to the broader Eagan community is that Plaintiff intends to seek class-wide relief on behalf of herself and a putative class of Eagan residents for Defendants' alleged negligence and alleged MERLA violations. See id. at p.1; id. ¶¶ 5-18, 25-27.

## II. THIS COURT HAS JURISDICTION PURSUANT TO CAFA

5. This case is removable, and this Court has jurisdiction pursuant to CAFA and 28 U.S.C. §§ 1332(d), 1441 and 1453, because (1) this case is a putative class action with more than 100 members in the proposed class; (2) there is minimal diversity, since at least one member of the proposed class, on the one hand, and Gopher Holdings, on the other, are citizens of different states; and (3) the Complaint places in controversy an amount that exceeds $5 million in the aggregate, considering all damages sought on behalf of Plaintiff and the proposed class, exclusive of interests and costs. See 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1332(d)(5)(B); 28 U.S.C. § 1332(d)(6).

6. A notice of removal "need not contain evidentiary submissions." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 84 (2014). Defendants must provide only "a short and plain statement of the grounds for removal" (28 U.S.C. § 1446(a)) that contains "plausible allegation[s]" and that CAFA's jurisdictional requirements are satisfied. See Dart Cherokee, 574 U.S. at 89. Thus, while Defendants deny any and all liability as to Plaintiff's claims and further deny that this matter should proceed at all, let alone as a class action, each of CAFA's jurisdictional requirements are satisfied here.

### A. This Is a Putative Class Action in Which The Proposed Class Exceeds 100 Members

7. A "class action" under CAFA includes any civil action filed under Federal Rule of Civil Procedure 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

8. This lawsuit meets that definition. While Defendants deny that Plaintiff has adequately pled a class action or that class treatment is appropriate, the Complaint indicates that Plaintiff intends to sue on behalf of herself and a putative class. Compl. at p.1 (labeling Complaint as "Class Action Complaint").

9. CAFA requires that the proposed class consist of at least 100 persons. See 28 U.S.C. § 1332(d)(5)(B).

10. As noted, the Complaint alleges that Defendants' conduct caused harm to Plaintiff and the broader Eagan community, including in the form of alleged water contamination and discharge of hazardous substances. See Compl. ¶¶ 17-18. The Complaint further alleges that Eagan is a "densely populated residential community" with a population of "68,855 at the 2020 census." Id. ¶ 15. As long as approximately 0.15 percent of that population fell within the scope of the putative class, then the 100-person threshold for CAFA jurisdiction would be met. The Complaint, however, indicates that the putative class substantially exceeds that threshold, because Plaintiff alleges that Defendants' operation of the Eagan Facility "discharged dangerously high levels" of purportedly hazardous substances "in and throughout Plaintiff's community" (id. ¶ 17)—

an allegation that indicates Plaintiff intends to seek relief on behalf of a large portion (if not all) of Eagan's community. Accordingly, 28 U.S.C. § 1332(d)(5)(B) is satisfied.

**B. There Is Minimal Diversity Among the Parties**

11. To establish federal jurisdiction under CAFA, a defendant must show only minimal diversity, meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Removal therefore is proper when even one proposed class representative or class member is a citizen of a state different from any defendant's state of citizenship. See, e.g., Dart Cherokee, 574 U.S. at 85 (noting that the parties must be "minimally diverse" to warrant removal under CAFA).

12. The Complaint accurately alleges that Gopher Holdings is a limited partnership organized under the laws of the State of Delaware. See Compl. ¶ 8. But the Complaint's allegation regarding Gopher Holdings' principal place of business is incorrect; at the time the lawsuit was filed and to the present, Gopher Holdings' principal place of business was and remains in the State of New Jersey rather than Minnesota. Under CAFA, an unincorporated association "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Accordingly, Gopher Holdings is a citizen of the States of Delaware and New Jersey for purposes of diversity jurisdiction under CAFA. See id.; see also City of East St. Louis v. Netflix, 83 F.4th 1066, 1071 (7th Cir. 2023) (holding that "§ 1332(d)(10) tells us that, for the purposes of § 1332(d), an unincorporated entity is treated like a corporation under § 1332(c)(1): one citizenship for the state of its principal place of business, another for the state of its organization, and the [members]' citizenship ignored");

Siloam Springs Hotel v. Century Sur. Co., 781 F.3d 1233, 1237 n.1 (10th Cir. 2015) ("Under CAFA, suits brought by 'unincorporated association[s]' are treated like suits by corporations in that the citizenship of the association for diversity jurisdiction purposes is determined by its state of organization and principal place of business, not by the citizenship of its members.").

13. Plaintiff alleges that she resided in Eagan, Minnesota "[a]t all relevant times[.]" Compl. ¶ 6. Although residence and citizenship are not coextensive, because Plaintiff alleges that she resided in Minnesota and because the alleged violations took place while she was present in Minnesota, the strongest inference from the Complaint is that Plaintiff is a citizen of the State of Minnesota for purposes of diversity jurisdiction under CAFA. In addition, given that the strongest inference from the Complaint is that the putative class consists of residents of the Eagan community who were present in Minnesota when the alleged violations took place (see disc. supra ¶ 10), many of the unnamed members of the putative class are likely to be Minnesota citizens as well. Moreover, there are no allegations that the Plaintiff or any members of the putative class are citizens of either the States of Delaware or New Jersey.

14. Diversity of citizenship thus exists between Gopher Holdings and at least one member of the putative class. The minimal diversity requirement is therefore satisfied.

**C. The Amount in Controversy Exceeds $5 Million**

15. Defendants deny that Plaintiff or members of the putative class are entitled to any of the damages that Plaintiff seeks here. Plaintiff's allegations are entirely without merit, and class treatment is not appropriate. For purposes of this Notice of Removal,

however, the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and thus satisfies the amount-in-controversy requirement of CAFA. See 28 U.S.C. § 1332(d)(2).

16. CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). The amount in controversy is determined by aggregating the value of the claims of each putative class member based on the allegations in the operative complaint. See Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) ("[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million."). Where a complaint does not state a dollar amount, the defendant's notice of removal under CAFA need include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 574 U.S. at 81. Any assessment of the total amount in controversy must take into consideration not only damages, but also the expenses that would be associated with an order enjoining Defendants' alleged unlawful conduct. See Keeling v. Esurance Ins. Co., 660 F.3d 273, 274 (7th Cir. 2011) (considering the costs of a defendant's compliance with the requested injunctive relief as part of the amount-in-controversy analysis for purposes of CAFA); see also Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 347-48 (1977) (determining that the "costs of compliance [with court-ordered injunctive relief] are

properly considered in computing the amount in controversy" under a previous version of 28 U.S.C. § 1331).

17. Plaintiff alleges that Defendants' operation of the Eagan Facility "caused Plaintiff to suffer personal injuries and diseases, incur in [sic] medical and rehabilitation expenses, and experience pain, suffering and physical impairment." Compl. ¶ 68. In particular, Plaintiff claims to have "suffered from severe and permanent physical pain, mental anguish, and disabilities," along with the "loss of a normal life" and need to incur "reasonable expenses for necessary medical treatment[.]" Id. ¶ 53; see also id. ¶ 55 ("Plaintiff suffered bodily injury, resulting in mental and physical pain and suffering, emotional distress, disability, disfigurement, loss of capacity for the enjoyment of life, and expense of hospitalization, medical and nursing care and treatment").

18. Although the Complaint does not identify a total dollar amount of damages, Plaintiff also alleges that Defendants' conduct harmed the "densely populated" Eagan community of approximately 68,855 people. Compl. ¶ 15. Plaintiff seeks to recover "all damages for death, personal injury, or disease[,]" including "any medical expenses, rehabilitation costs or burial expense;" "any loss of past or future income, or loss of earning capacity;" and "damages for pain and suffering, including physical impairment." Id. ¶ 58. Given that Plaintiff is alive but seeks to recover damages for "death" and "burial expenses," the strongest inference is that she intends to seek such damages for alleged harms on behalf of herself and putative class members from the surrounding Eagan community. See id. Plaintiff would only need to seek to recover approximately $73 on behalf of each of those Eagan residents for the $5 million CAFA threshold to be met based on the putative class's

damages alone. In light of the severity of the alleged harms—including death, disability, pain and suffering, disfigurement, emotional distress and loss of past or future income and earning capacity—the amount of damages that Plaintiff intends to seek on behalf of herself and putative class members will likely be substantially higher than that amount. CAFA's amount in controversy requirement accordingly is satisfied.

## III. COMPLIANCE WITH REMOVAL STATUTE

19. The Notice of Removal was properly filed in this District, because the District Court for the First Judicial District of the County of Dakota, Minnesota, is located in this District. See 28 U.S.C. § 1441(a); 28 U.S.C. § 103(3).

20. The Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11. See 28 U.S.C. § 1446(a).

21. Pursuant to 28 U.S.C. § 1446(a), attached hereto and marked as **Exhibits 1, 2 and 3** are true and correct copies of the Complaint (Exhibit 1) and all process, pleadings, and orders served upon Gopher and Gopher Holdings (Exhibits 2 and 3, respectively). A copy of the District Court for the First Judicial District of the County of Dakota, Minnesota docket sheet is attached as **Exhibit 4**. Defendants have not filed an answer or other response to the Complaint in state court prior to removal. Defendants are not aware of any pending motions filed under Minnesota procedural rules in state court.

22. The Notice of Removal is filed within 30 days of service of the Complaint on Defendants, and therefore this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1); see also disc. supra ¶ 2 (Complaint was served on Gopher on September 4, 2025 and on Gopher Holdings on September 8, 2025).

23. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff, and a copy, along with a Notice of Filing of the Notice of Removal, is today being filed with the Clerk of the District Court for the First Judicial District of County of Dakota, Minnesota.

24. Defendants reserve the right to amend or supplement this Notice of Removal. Defendants further reserve all rights and defenses, including those available under the Federal Rules of Civil Procedure and any other applicable rules, statutes, or case law.

## IV. CONCLUSION

Defendants respectfully request that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the District Court for the First Judicial District of the County of Dakota, Minnesota. Defendants further request such other relief as the Court deems appropriate.

Dated: October 2, 2025

**BERENS & MILLER, P.A.**

*s/Barbara Podlucky Berens*
Barbara Podlucky Berens (#209788)
Kari Berman (#0256705)
80 South 8th Street
3720 IDS Center
Minneapolis, MN 55402
(612) 349-6171
bberens@berensmiller.com
kberman@berensmiller.com

Mark S. Mester
*(pro hac vice forthcoming)*
Robin M. Hulshizer
(*pro hac vice forthcoming*)
Robert C. Collins III
(*pro hac vice forthcoming*)
Dylan P. Glenn
(*pro hac vice forthcoming*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: 312-876-7700
Facsimile: 312-993-9767
Email: mark.mester@lw.com
robin.hulshizer@lw.com
robert.collins@lw.com
dylan.glenn@lw.com

***Attorneys For Defendants***